IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: § <br> CARL N. MERKLE, § <br> § <br> DEBTOR. § <br> _____ § <br> PILGRIM REO, LLC, § <br> § <br> Plaintiff, § <br> v. § <br> JANIE J. MERKLE, § <br> § <br> Defendant, § <br> CARL MERKLE, § <br> § <br> Intervenor. § <br> § | | CHAPTER 11 CASE <br><br> CASE NO. 16-50026-cag <br> _____ <br><br><br><br><br> ADV. NO. 17-05041-cag |

**MOTION TO DISMISS DEBTOR'S PLEA IN INTERVENTION PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE CRAIG A. GARGOTTA, UNITED STATES BANKRUPTCY JUDGE:

COME NOW, Creditor and Party-in-Interest PILGRIM REO, LLC ("Pilgrim") and Party-In-Interest CAPITAL CROSSING SERVICING COMPANY, LLC ("Capital Crossing," and together with "Pilgrim," "Respondents") and file this *Motion to Dismiss Debtor's Plea in Intervention Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim upon which Relief can be Granted* ("Motion to Dismiss") and in support thereof, show the Court as follows:

**I.     JURISDICTION, VENUE, AND STATUTORY PREDICATE FOR RELIEF**

1.     This Court has jurisdiction over this Motion to Dismiss pursuant to 28 U.S.C. § 1334(b) and the United States District Court for the Western District of Texas' *Order of Reference of Bankruptcy Cases and Proceedings* dated October 4, 2013. This adversary proceeding was removed from the State Court pursuant to 28 U.S.C. § 1452, FED. R. BANKR. P. 9027, and Local Rule 9027.

2. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (C).

3. Venue in this district is proper 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicate for relief is FED. R. CIV. P. 12, made applicable to this proceeding through FED. R. BANKR. P. 7012, and LOCAL RULE 7012.

5. Pursuant to Local Rule 7016, the Court may rule on this Motion to Dismiss without a hearing.

## II.     INTRODUCTION

6. The Debtor (Carl N. Merkle) owns and operates an apartment complex known as the Northeast Village Apartments, located at 4535 Schertz Rd., San Antonio, Texas 78233 (the "Property").[1]

7. On or about July 11, 2005, the Debtor and his then-wife Janie J. Merkle (Janie Merkle) entered into that certain Multifamily Note (the "Note") for the purpose of purchasing the Property and that certain Multifamily Deed of Trust Assignment of Rents and Security Agreement ("Deed of Trust," and together with the Note, the "Loan Documents"), which secured payment of all sums due under the Note. *See* Petition In Intervention ¶8;[2] true and correct copies of the Note and Deed of Trust are attached to the Affidavit of Kevin Shea ("Shea Affidavit") as **Exhibits A-1** and **A-2**, respectively. The Property is collateral subject to the Deed of Trust. *See* Ex. A-2.

8. Pilgrim is the current holder of the Loan Documents and Capital Crossing services the Note on behalf of Pilgrim. *See* Petition in Intervention ¶ 10.

9. At various times since 2005, the Debtor has been in default under the terms of the

---

[1] This Court approved the sale of the Property on May 31, 2017. The Court may take judicial notice of the record of the underlying bankruptcy case pursuant to Fed. R. Evid. 201.

[2] The Petition In Intervention is attached to the Notice of Removal filed in this Adversary Proceeding. For the Court's convenience, a true and correct copy of the Petition in Intervention is attached hereto as **Exhibit B**.

Loan Documents. Specifically, Debtor has, *inter alia*, failed to make monthly installment payments of principal, interest, and escrow in full and on time. *See* Petition in Intervention ¶¶ 20-22.

11. 10. On or about September 4, 2015, the Respondents – by and through their counsel – sent Debtor a Notice of Default and Notice of Intent to Accelerate ("Notice of Default"), noting Debtor's ongoing payment defaults and invoking, but not exercising, the remedy of acceleration under the Loan Documents. *See* Petition in Intervention ¶23;[3] a true and correct copy of the Notice of Default is attached to the Shea Affidavit as **Exhibit A-3**.

11. On or about October 8, 2015, Debtor had not cured the payment defaults, and Respondents – by and through their counsel –sent Debtor a Notice of Acceleration. A true and correct copy of the Notice of Acceleration is attached to the Shea Affidavit as **Exhibit A-4**. The Debtor did not pay the full amount owed under the Loan Documents as required by the Notice of Acceleration, and the Petition in Intervention does not contain any factual assertion that the Debtor made payment in compliance with the Notice of Acceleration.

12. On or about December 15, 2015, the Respondents – by and through their counsel – sent the Debtor a letter transmitting the Notice of Substitute Trustee's Sale ("Sale Notice"). *See* Petition in Intervention ¶ 26; a true and correct copy of the December 15, 2015 letter including the Sale Notice is attached to the Shea Affidavit as **Exhibit A-5**.

**Debtor's Bankruptcy Case**

13. On January 4, 2016 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under title 11 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*).

14. On April 29, 2016, Pilgrim filed its Proof of Claim No. 6, asserting a secured

---

[3] The Petition in Intervention dates the Notice of Default as September 11, 2015, which is demonstrably incorrect when viewing the actual Notice of Default. Thus, the Respondents submit that this erroneous factual assertion should not be taken as true.

claim in the amount of $877,134.63. On November 4, 2016, Pilgrim filed an Amended Proof of Claim No. 6, asserting a secured claim in the amount of $922,675.19. On May 18, 2017, Pilgrim filed a Second Amended Proof of Claim, asserting a secured claim in the amount of $964,253.16 and providing additional support for the amount of the claim. Together, original proof of claim with all amendments shall be referred to as "Pilgrim's Claim."

15. On March 17, 2017, Debtor filed his *Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC* [Dkt. 111]. On March 27, 2017, Debtor filed his *First Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC* [Dkt. 119]. On May 4, 2017, Debtor filed his *Second Amended Objections and Counterclaims to Original Claim No. 6 and Amended Claim No. 6 filed by Pilgrim REO, LLC and Capital Crossing Servicing Company, LLC* [Dkt. 159] ("Second Amended Claim Objection," and together with the filings at Dkt. 111 and Dkt. 119, the "Claim Objection"). A true and correct copy of the Second Amended Claim Objection is attached hereto as **Exhibit C**.

16. In summary, the Debtor argues that the Respondents have not or cannot support Pilgrim's Claim. Additionally, the Debtor asserts various Counterclaims against the Respondents, which he argues entitle him to an offset reducing the allowed amount of Pilgrim's Claim. *See generally* Second Amended Claim Objection.

**The State Court Action**

17. On or about August 12, 2016, Pilgrim sued Janie Merkle in the 57th Judicial District of Bexar County, Texas for the amounts due under the Loan Documents.

18. On or about May 4, 2017, Debtor filed his Petition in Intervention, which raises

the same causes of action[4] that are asserted in the Second Amended Claim Objection.

19. On May 30, 2017, Respondents removed the State Court action to this Court because the claims raised in the Petition in Intervention are claims belonging to the Bankruptcy Estate of Carl Merkle and are inextricably intertwined with the claims resolution process that it already pending before this Court.

**The Motion to Dismiss**

20. As set forth below, the causes of action asserted in the Debtor's Petition in Intervention fail to state claims for which relief can be granted. Therefore, they should be dismissed. Furthermore, the Petition in Intervention should be dismissed with prejudice because allowing the Debtor to re-plead would be futile.

### III. THE LAW APPLYING FED. R. CIV. P. 12(b)(6)

21. FED. R. CIV. P. 12(b)(6), made applicable to this proceeding through FED. R. BANKR. P. 7012, codifies the complete affirmative defense that a party has failed to state a claim upon which relief can be granted. Under the liberal pleading standards of the Federal Rules of Civil Procedure, a complaint "does not need detailed factual allegations," but the claimant's obligation to "provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[5]

22. The Supreme Court has further explained that

> [u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must

---

[4] The Debtor denominated the causes of action as affirmative defenses as they apply to Pilgrim and as affirmative claims as they apply to Capital Crossing. *See* Petition in Intervention ¶ 30. For brevity's sake, the Respondents will refer to them as "causes of action" for purposes of this Motion to Dismiss, as there is no difference in the applicable analysis that depends on whether they are treated as affirmative defenses or affirmative claims for relief.

[5] Unless otherwise noted, all internal citations, quotation marks, and brackets are omitted.

> contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

23. The Fifth Circuit has construed these standards as requiring that a complaint

> contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016). This standard comports with the Supreme Court's interpretation in *Iqbal* and *Twombly* that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

24. If the Court finds it necessary to consider matters outside the pleadings in order to resolve a motion to dismiss under FED. R. CIV. P.12(b)(6), it may convert the motion to a motion for summary judgment under FED. R. CIV. P. 56, made applicable to this proceeding under FED. R. BANKR. P. 7056.[6]

25. If this Motion to Dismiss is treated as a motion for summary judgment, the Respondents must "show[] that there is no genuine dispute as to any material fact and [they are]

---

[6] The inclusion of documents outside the pleadings does not automatically convert the motion to dismiss for a motion for summary judgment. "[T]he Fifth Circuit has noted approvingly that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his or her claim." *Crucci v. Seterus, Inc.*, EP-13-CV-317-KC, 2013 WL 6146040, at *2 (W.D. Tex. Nov. 21, 2013). The Respondents submit that the documents attached hereto fall within that category of documents that should be considered part of the pleadings under this standard, and therefore, the Motion to Dismiss is properly considered under the standards applicable to FED. R. CIV. P. 12(b)(6) despite the inclusion of additional materials.

entitled to judgment as a matter of law." FED. R. CIV. P.56(a).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . If summary judgment is appropriate, the Court may resolve the case as a matter of law. The Fifth Circuit has stated the standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court.

*In re Doolittle*, 557 B.R. 528, 529-30 (Bankr. W.D. Tex. 2016) (internal citations, quotation marks, and brackets omitted).

26. In this instance, the causes of action pled in the Petition in Intervention fail to state a plausible claim for relief. Even if all the factual allegations in the Petition in Intervention are taken as true, the Debtor has not – and as a matter of law, cannot – make a facially plausible claim that the Respondents are liable to the Debtor "for the misconduct alleged." Accordingly, the Petition in Intervention should be dismissed with prejudice. *See Guerrero v. Hauck,* 502 F.2d 579, 580 (5th Cir. 1974) ("A dismissal with prejudice for failure to state a claim should not be entered unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

27. Alternatively, the undisputed and indisputable facts of this case show that the Respondents are entitled to judgment as a matter of law, because the Debtor cannot, under any set of circumstances, show that he is entitled to the relief claims in his Petition in Intervention.

### IV. ARGUMENT AND AUTHORITIES

28. The Debtor's asserted causes of action do not state cognizable claims for relief that can be granted. As set forth in detail below, the factual allegations contained in the Petition in Intervention, even if taken as true, do not establish even facial plausibility that the Debtor is

entitled to the relief claimed.

### A. Breach of Contract

29. In his first cause of action, the Debtor alleges that the Respondents breached the Deed of Trust because (a) they misapplied insurance proceeds to the debt owed and (b) did not follow the proper requirements for notice of default or foreclosure. *See* Petition in Intervention ¶ 34. Neither of these factual allegations establishes a plausible claim for relief.

#### a. The Debtor does not state a cognizable claim for breach of contract based on incorrect application of insurance funds

30. The Debtor alleges that the Respondents breached the Deed of Trust "by misapplying insurance proceeds to the debt owed on the mortgage." Petition in Intervention, ¶ 34. The Debtor acknowledges that section 5 of the Deed of Trust provides, in pertinent part:

> Borrower further authorizes Lender, at Lender's option (a) to hold the balance of such proceeds [*i.e.*, insurance proceeds] to be used to reimburse Borrower's for the cost of reconstruction or repair of the Property or (b) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof . . . .

*See* Ex. A-2; *see also* Petition in Intervention, ¶ 14.

31. In turn, paragraph 3 of the Deed of Trust states that payments

> shall be applied in the following order of priority: (i) amounts payable to Lender by Borrower under paragraph 2 hereof; (ii) interest payable on the Note; (iii) principal of the Note, (iv) interest payable on advances made pursuant to paragraph 8 hereof; (v) principal of advances made pursuant to paragraph 8 hereof; (vi) interest payable on any Future Advance . . . ; (vii) amounts of interest payable on the Future Advances . . . ; and (viii) any other sums secured by this instrument in such order as Lender, at Lender's option may determine . . . .

*See id.*

32. Finally, paragraph 2 of the Deed of Trust provides, in pertinent part:

> Upon Borrower's breach of any covenant or agreement of

> Borrower in this Instrument, Lender may apply, in any amount and in any order as Lender shall determine in Lender's sole discretion, any Funds held by Lender at the time of application (i) to pay rates, rents, taxes, assessments, insurance premiums and Other Impositions which are now or will hereafter become due, or (ii) as a credit against sums secured by this Instrument.

*See id.*

33. The Respondents received the insurance proceeds in May 2015. *See* Petition in Intervention ¶ 17.[7] The Debtor admits that at that time, he was in default of the payment terms under the Loan Documents, having made only partial payments in from January 2015 to July 2015. *See* Second Amended Claim Objection, ¶ 12. Therefore, under paragraphs 2 and 5 of the Deed of Trust, the Respondents had sole discretion to apply the insurance proceeds.

34. The Debtor alleges that the Respondents breached the Deed of Trust by not applying the insurance funds to the delinquent monthly installment payments. *See* Petition in Intervention, ¶ 21. However, under the plain language of the terms of the Deed of Trust, the Respondents could choose, in their sole discretion to use the funds "to pay rates, rents, taxes, assessments, insurance premiums and Other Impositions which are now *or will hereafter become due*." Ex. A-2, Deed of Trust, ¶ 2 (emphasis added). In other words, the Respondents' handling of the insurance proceeds was entirely consistent with the terms of the Deed of Trust.

35. Based on the foregoing, even taking the Debtor's factual allegations as plead in the Petition in Intervention as true, the Debtor does not state a plausible claim for breach of contract based on the Respondents' application of the insurance proceeds. The Debtor may prefer that the proceeds had been applied as a credit to his delinquent payments, but the Respondents had no contractual obligation under the Deed of Trust to apply the funds in that

---

[7] The Respondents contend that they did not receive the insurance proceeds until June 2015, since the check issued in May 2015 was returned by the bank. *See* Petition in Intervention, ¶¶ 18-19. However, for purposes of this Motion to Dismiss only, the Respondents take the Debtor's factual assertions as true, and whether the insurance proceeds were received in May 2015 or June 2015 makes no difference for purposes of the analysis herein.

L & B 17331/0003/L1285919.DOCX/ 9

manner. Because the Respondents' application of the insurance proceeds was consistent with the terms of the Deed of Trust, the Debtor's counterclaim for breach of contract based on the alleged incorrect application of insurance funds does not state a claim upon which relief can be granted and should be dismissed.

36. Moreover, further amendment would be futile because under the plain and unambiguous language of the Deed of Trust, the insurance proceeds were properly applied, therefore the cause of action for breach of contract based on improper application of insurance proceeds should be dismissed with prejudice.

### b. The Debtor does not state a cognizable claim for breach of contract based on insufficient notice of the scheduled foreclosure sale of the Property

37. The Debtor does not cite to any particular legal or statutory basis for his claim that Respondents did not follow proper requirements for notice of default or foreclosure. *See* Petition in Intervention, ¶ 34. However, he does state that the Property was his residence, which implicates section 51.002(d) of the Texas Property Code. *See* Petition in Intervention, ¶¶ 11-12. That statute provides that:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

38. The Debtor is not entitled to relief for "breach of contract" based on this statutory section because, as set forth below, section 51.002 of the Texas Property Code does not apply to

the Debtor's transactional relationship with the Respondents. First, an alleged failure to comply with section 51.002(d) does not provide a cause of action prior to the actual foreclosure sale has occurred. Second, as a matter of law, section 51.002(d) does not apply under the circumstances of this case. Third, even assuming *arguendo*, that section 51.002(d) does apply, the Respondents did not post the Property for sale for at least twenty (20) days after sending the Debtor the Notice of Default and therefore, complied with section 51.002(d).

39. **No claim under Texas Property Code without a foreclosure sale.** The failure to provide notice under 51.002(d) of the Texas Property Code does not give rise to a cognizable claim for relief until a foreclosure sale has occurred. *See Suarez v. Ocwen Loan Servicing, LLC*, 5:15-CV-664-DAE, 2015 WL 7076674, at *3 (W.D. Tex. Nov. 12, 2015); *Adams v. Bank of Am.*, 4:10-CV-709, 2011 WL 5080217, at *5 (E.D. Tex. Oct. 26, 2011), *aff'd*, 475 Fed. Appx. 526 (5th Cir. 2012); *Ayers v. Aurora Loan Services, LLC*, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011). Debtor creatively denominates this claim as a "breach of contract,"[8] but that does not change the fact that there is no claim for an alleged violation of section 51.002(d) unless and until a foreclosure sale occurs.

40. There is no factual allegation contained in the Petition in Intervention that a foreclosure sale occurred. Of course, this Court is well aware that no such sale occurred, having approved a sale from the Debtor to a third-party buyer pursuant to section 363 of the Bankruptcy Code on May 31, 2017.

41. The analysis of the applicability of section 51.002(d)'s notice requirements is further supported by the fact that the Texas Courts recognize a cause of action for "wrongful foreclosure" but do not recognize any cause of action for "improper notice of foreclosure," as is

---

[8] Notably, the Debtor does not allege any specific provision of the Deed of Trust that was supposedly breached by the alleged improper notice of foreclosure.

asserted by the Debtor. Under Texas law, "[t]o prevail in a wrongful foreclosure suit, a party must establish (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price." *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 569 (Tex. App.—Amarillo 2013, pet. denied). Since the cause of action recognized by Texas law requires more than just a procedural defect – *i.e.* actual damages resulting from a procedurally defective sale – it follows that there can be no cognizable right to relief for a procedural defect on its own, as is asserted by the Debtor in this case. *See Ayers*, 787 F. Supp. 2d at 454 (Texas law does not recognize a claim for attempted wrongful foreclosure).

42. Because the scheduled foreclosure sale never occurred, the Debtor has no cognizable claim for relief based on the alleged failure to comply with the notice periods under section 51.002(d) of the Texas Property Code.

43. **The requirements of TEX. PROP. CODE § 51.002(d) do not apply in this case.** Even assuming, *arguendo*, that there was a cognizable cause of action for improper notice under section 51.002(d), the Debtor would still not be entitled to relief because the Property is a commercial building purchased for commercial purposes. In the Note, the Debtor "represent[ed] that the indebtedness evidenced by this Note is being incurred by the undersigned solely for the purpose of carrying on a business or commercial enterprise, and not for personal, family, or household purposes." *See* Ex. A-1 at CC_00378. In the Deed of Trust, the Debtor represented and agreed that the proceeds of the Note secured by the Deed of Trust were to be "used for business purposes and that the principal obligation secured [thereby] constitute[d] a business loan." *See* Ex. A-2 at ¶ 35. The requirements under TEX. PROP. CODE § 51.002(d) do not apply to commercial properties. *See Knapik v. BAC Home Loans Servicing, LP*, 825 F. Supp. 2d 869,

871 (S.D. Tex. 2011). Therefore, as a matter of law, the Debtor does not have a cognizable claim for relief arising under TEX. PROP. CODE § 51.002(d).

44. **The Respondents complied with the notice requirements of TEX. PROP. CODE § 51.002(d).** Finally, the Debtor cannot state any cognizable claim for relief under section 51.002(d) because the Debtor was afforded more than twenty (20) days to cure his defaults between the Notice of Default and the Sale Notice. As noted above, the Notice of Default was sent to Debtor on September 4, 2015. The Notice of Acceleration was sent thirty-four (34) days later, on October 8, 2015. Finally, the Sale Notice was sent on December 15, 2015, which was 102 days after the Notice of Default and sixty-nine (69) days after the Notice of Acceleration.[9] Accordingly, assuming that the notice provisions of section 51.002(d) apply (which the Respondents do not concede), the Respondents complied with the statute. *See, e.g.*, *Gossett v. Fed. Home Loan Mortg. Corp.*, 919 F. Supp. 2d 852, 860 (S.D. Tex. 2013) (where notices of default and notice of acceleration were mailed to debtor more than twenty (20) days before date of scheduled sale, defendants were entitled to summary judgment on debtor's breach of contract claim based on improper notice under TEX. PROP. CODE § 51.002(d)); *Newman v. Woodhaven Nat. Bank, Inc.*, 762 S.W.2d 374, 375 (Tex. App.—Fort Worth 1988, no writ) (where notice of default was sent on February 1, 1988 and notice of intention to foreclose was sent on March 10, 1988, the requirements of TEX. PROP. CODE § 51.002(d) were satisfied).

45. Based on the foregoing, the Debtor's cause of action for breach of contract based on "improper notice and foreclosure attempt" does not state a plausible claim for relief. First,

---

[9] The notice requirements of section 51.002(d) are measured using the "mailbox rule," and service is effective on the day the notices are placed in the mail, whether or not the debtor receives them. *See Gossett v. Fed. Home Loan Mortg. Corp.,* 919 F. Supp. 2d 852, 859 (S.D. Tex. 2013) (citing TEX. PROP. CODE § 51.002(e)).

Furthermore, if the Court takes as true the Debtor's allegation that the Notice of Default was sent on September 11, 2015, *not* September 4, 2015, the analysis still applies. Using the September 11th date, the Notice of Acceleration was sent twenty-eight (28) days later and the Sale Notice was sent ninety-five (95) days later, easily complying with the notice requirements of TEX. PROP. CODE § 51.002(d), assuming said requirements are applicable.

there is no cause of action for wrongful foreclosure without a foreclosure and Texas law does not recognize any claim for "wrongful attempted foreclosure" prior to a foreclosure sale. Second, even if there were a recognized cause of action for insufficient notice alone, the Debtor would not be entitled to such relief because the notice requirements that Debtor relies on do not apply to commercial property such as the Property. Third, even if the notice provisions of TEX. PROP. CODE § 51.002(d) applied in this case, the Respondents satisfied them. For all those reasons, the Debtor's cause of action for breach of contract based on the alleged improper notice of foreclosure fails to state a claim upon which relief can be granted. Since the Debtor's cause of action for Breach of Contract based on improper notice and foreclosure attempt are precluded as a matter of law, further amendment would be futile, and the cause of action should be dismissed with prejudice.

### B. Debtor's Counterclaim For "Common Law Unreasonable Debt Collection" Should Be Dismissed

46. The Debtor alleges that he is entitled to offset and recoupment because of "Capital Crossing's unreasonable debt collection pursuant to Texas Common Law." Petition in Intervention, ¶ 37. He further pleads that Capital Crossing attempted to foreclosure on the Property

> knowingly or in reckless disregard of the fact that 1) the note and deed of trust was not properly accelerated, 2) the notice to cure was not in compliance with Texas law, and 3) any deficiency had been cured by application of the insurance proceeds. Pilgrim and/or Capital Crossing took these actions maliciously to harm [Debtor] in attempt to collect the Debt.

Petition in Intervention, ¶ 38.

47. These claims, even if taken as true, do not state a facially plausible claim for unreasonable debt collection. Under Texas law,

> [u]nreasonable collection is an intentional tort. But the elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case. . . . One of the more precise legal descriptions delineates the conduct giving rise to the tort as efforts that amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.

*EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.)

48. The Petition in Intervention does not plead factual allegations amounting to "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." Instead, the Debtor makes the barest conclusory statements that fall far short of the liberal pleading standard of FED. R. CIV. P. 8(a) as interpreted under *Iqbal* and *Twombly*.

49. Because the Debtor fails to tie any factual allegations to his common law unreasonable debt collection claim, the Respondents and the Court must guess how they supposedly committed this intentional tort. However, none of the factual allegations plead in the Petition in Intervention give rise to a plausible claim under Texas law.

50. First, it is well-settled that "[s]ending acceleration notices and foreclosing on a home in a case where a person is in default on his mortgage loan do not amount to willful, wanton and malicious conduct required for an unreasonable debt collection claim." *Johnson v. Aurora Loan Services, LLC*, CIV.A. H-15-755, 2015 WL 5009228, at *6 (S.D. Tex. Aug. 21, 2015). Thus, the allegations relating to the Notice of Default, Notice of Acceleration, and Sale Notice cannot be the basis for this cause of action.

51. Under the pleading standard set by *Iqbal* and *Twombly* and their progeny, mere recitations of the elements of a claim are insufficient to meet the notice pleading standard of FED. R. CIV. P. 8. Here, the Debtor does not even do that much. The Petition in Intervention does not even recite the elements of a common law unreasonable debt collection claim, let alone provide

factual allegations that, if taken as true, would give rise to a plausible claim for relief. The Petition in Intervention is notably devoid of *any* allegation that the Respondents (or either of them) acted with the intent "to inflict mental anguish and bodily harm." Accordingly, the Debtor's cause of action for unreasonable debt collection should be dismissed. Further amendment would be futile because, as a matter of law, sending the Notice of Default, the Notice of Acceleration, and the Sale Notice cannot "a course of harassment that was willful, wanton, malicious," therefore, the cause of action for unreasonable debt collection should be dismissed with prejudice.

## V.     CONCLUSION

52.     Based on the foregoing, it is apparent that the Debtor's causes of action for breach of contract and common law unreasonable debt collection do not meet the requirements of FED. R. CIV. P. 8, as interpreted by *Iqbal*, *Twombly*, and their progeny, and that the Debtor has therefore failed to state a claim upon which relief can be granted. Even construing each of the Debtor's factual allegations as true, he has not shown even a mere possibility that the alleged conduct would make the Respondents liable to him for any damages. Therefore, the Plea in Intervention should be dismissed.

53.     Further, dismissal with prejudice is appropriate in this case, because the Debtor can prove no set of facts that would entitle him to relief. Allowing the Debtor the opportunity to amend the Petition in Intervention would be futile, since the Debtor is not entitled to the relief he claims as a matter of law, no matter how he frames the factual allegations.

54.     In the alternative, if the Court considers this Motion to Dismiss as a Motion for Summary Judgment, the same analysis applies. Based on the undisputed and indisputable facts of this case, there are no genuine issues of material facts and the Respondents are entitled to

judgment as a matter of law on the Debtor's causes of action. As demonstrated above, even if the Debtor could prove each and every fact pled in the Petition in Intervention (which Respondents do not concede), the relief requested is barred as a matter of law.

WHEREFORE, PREMISES CONSIDERED, the Respondents pray that the Court enter an order dismissing with prejudice the Debtor's Petition in Intervention, or in the alternative, granting summary judgment in favor of the Respondents and against the Debtor, and for such other relief to which they may be entitled at law or equity.

Dated: June 5, 2017

RESPECTFULLY SUBMITTED,

LANGLEY & BANACK, INCORPORATED
Suite 700, Trinity Plaza II
745 East Mulberry
San Antonio, TX 78212-3166
Telephone: (210)-736-6600
Fax: (210) 735-6889

By: */s/ David S. Gragg*
DAVID S. GRAGG
Texas State Bar No. 08253300
NATALIE WILSON
Texas State Bar No. 24076779

ATTORNEYS FOR PILGRIM REO, LLC and CAPITAL CROSSING SERVICING COMPANY, LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 5, 2017, a true and correct copy of the foregoing document was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmitted electronically to all ECF participants registered to receive electronic notice in the bankruptcy proceeding and via regular U.S. Mail postage pre-paid to the parties listed below.

Debtor
Carl N. Merkle
4535 Schertz Road, Apt. 406
San Antonio, TX 78233

ATTORNEYS FOR PLAINTIFF
Joel W. Reese
Bradley M. Gordon
Reese Gordon Marketos LLP
750 N. St. Paul St., Suite 610
Dallas, TX 75201

DEFENDANT (*pro se*)
Janie J. Merkle
6 Williamsburg
Irvine, CA 92620
jmerkle@earthlink.net

INTERVENOR (*pro se*)
Carl N. Merkle
4446 Bayliss St.
San Antonio, TX 78233
carl.merkle@gmail.com

DEBTOR's ATTORNEY (Bankruptcy Case only)
Ricardo Guerra
Guerra Days Law Group
2211 Rayford Rd., Suite 111 #134
Spring, TX 77386

U.S. TRUSTEE
United States Trustee
P.O. Box 1539
San Antonio, TX 78295-1539

                                                        */s/ David S. Gragg*
                                                        David S. Gragg